IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

SUSAN L. LANKFORD, et. al., )
)
                Plaintiffs, )
)
v. )    No. 05-4285-CV-C-DW
)
GARY SHERMAN, DIRECTOR, )
MISSOURI DEPARTMENT OF SOCIAL )
SERVICES, in his official capacity, )
)
                Defendant. )

## ORDER

Before the Court are Plaintiffs' Supplemental Memorandum in Support of Motion for Preliminary Injunction and Plaintiffs' Motion for Summary Judgment on their permanent injunction claim. (Doc. 46 and 49). Oral argument was heard on February 7, 2007. Parties have fully briefed the issue and it is ready for consideration.

Plaintiffs filed their complaint and a motion for a temporary restraining order ("TRO") and preliminary injunction on August 29, 2005. Plaintiffs sought to enjoin Defendant from implementing and enforcing a September 2005 emergency regulation. See Mo. Code Regs. Ann. tit. 13, § 70-60.010 (2005) ("The Regulation"). The Regulation reinstates coverage of Durable Medical Equipment[1] ("DME"), with limitations that are the subject of this lawsuit, for Missouri Medicaid recipients.

The Court denied the TRO and ordered a preliminary injunction hearing for Sept. 7, 2005. After hearing argument, the Court denied the Motion for Preliminary Injunction. Plaintiffs

---

[1] The regulation defines Durable Medical Equipment as "equipment that can withstand repeated use, is primarily and customarily used to served a medical purpose, generally is not useful to a person in the absence of an illness or injury, and is appropriate for use in the home." Mo. Code Regs. Ann. tit. 13, § 70-60.010(4)(2005).

appealed to the Eighth Circuit. The Eighth Circuit reversed this Court's Order finding that Plaintiffs had "established a likelihood of success on the merits of their preemption claim as it relates to Medicaid's reasonable-standards requirement." Lankford v. Sherman, 451 F.3d 496, 513 (8th Cir. 2006). The Eighth Circuit remanded the case for findings as to the three remaining preliminary injunction factors. Id.

In determining whether a preliminary injunction is proper, the Court must consider (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm and the injury that granting the injunction will inflict on other interested parties; and (4) the public interest. Dataphase Sys. v. C.L. Sys., Inc., 640 F. 2d 109, 114 (8th Cir. 1981). The standard for granting a permanent injunction is practically identical to the preliminary injunction. Bank One, N.A. v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999). The sole difference is that in a permanent injunction, Movant must show actual success, and not a probability of success, on the merits. Id.

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to relief as a matter of law. See Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the initial burden is met, the burden shifts to the nonmovant to set forth specific facts by affidavit or other evidence showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Nonmovant may not rest on the mere allegations of its pleadings. Id. It is the court's obligation, however, to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Anderson v. Liberty Lobby, 477 U.S. 242, 252-255 (1986).

"Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." Uhl v. Swanstrom, 79 F.3d 751, 754 (8th Cir. 1996).

Given that the Eighth Circuit fully discussed the factual background of this case, the Court references facts only as necessary to the discussion.

### Success on the Merits

After analyzing the case law, regulations, and directives from the Center for Medicaid and State Operations ("CMS"), the Eighth Circuit found that since Missouri elected "to cover DME as an optional Medicaid service, it cannot arbitrarily choose which DME items to reimburse under its Medicaid policy." Lankford, 451 F.3d at 511. Missouri may elect to use a pre-approved list of acceptable DME, but, if it so chooses, Missouri must also provide a "meaningful procedure for requesting non-covered items." Id. at 512. The Eighth Circuit found that Missouri's failure to provide a meaningful procedure for requesting non-covered items rendered Missouri's pre-approved list of DME unreasonable. Id. at 512-513. Accordingly, the court found that Plaintiffs had "established a likelihood of success on the merits of their preemption claim as it relates to Medicaid's reasonable-standards requirement." Id. at 513.

In determining whether Plaintiffs had shown a likelihood of success on the merits, the Eighth Circuit addressed the identical legal issue this Court must consider to determine whether Plaintiffs have shown actual success–whether the Regulation is preempted by Medicaid's reasonable-standards requirement. Accordingly, the Court defers to the Eighth Circuit's analysis and finds that Plaintiffs have shown actual success on the merits. Lankford, 451 F. 3d at 511 ("a state's failure to provide Medicaid coverage for non-experimental, medically-necessary services within a covered Medicaid category is *both per se unreasonable and inconsistent* with the stated goals of Medicaid.").

In his Opposition Brief, Defendant argues that Plaintiffs have not shown actual success

on the merits because changed factual circumstances render the Eighth Circuit's analysis inapplicable. Those changes, however, do not alter the Eight Circuit or this Court's conclusion. Although the statute has "been amended to provide wheelchair accessories," this change does not create a statute that is "substantially different." The lack of wheelchair accessories was merely one of many exclusions the Eighth Circuit considered in rendering its decision. The failure to cure the other exclusions renders the single change insubstantial.

Defendant also argues that a draft proposed amendment to the statute cures the problems raised by the Eighth Circuit. While this may be true, until the amendment becomes Missouri law, it has no relevance to this analysis.

Plaintiffs have thus shown actual success on the merits for their preemption claim.[2]

**Irreparable Harm**

As stated above, Missouri's current Regulation unreasonably denies Plaintiffs DME benefits. Although Plaintiffs do not have an absolute right to DME, once Missouri elects to provide DME, Plaintiffs have a right to have "the federally-funded DME program . . . . comply with Medicaid's reasonable-standards requirement, and its implementing regulations." Lankford v. Sherman, 451 F.3d 496, 504 (8th Cir. 2006).

Plaintiffs have shown irreparable harm resulting from this improper denial. As Plaintiffs'

---

[2]The Court does not address whether Plaintiffs established a likelihood of success on the merits for their preliminary injunction claim. The Eighth Circuit held that Plaintiffs "established a likelihood of success on the merits of their preemption claim as it relates to Medicaid's reasonable-standards requirement." Under the law of the case doctrine, this Court is bound by that holding. See Jones v. United States, 255 F. 3d 507, 510 (8th Cir. 2001). "The law of the case doctrine generally requires that a decision on a former appeal be followed in any subsequent proceedings unless evidence subsequently introduced is substantially different . . . . " United States v. Unger, 700 F.2d 445, 450 (8th Cir. 1983); In re Progressive Farmers Assoc., 829 F.2d 651, 655 (8th Cir. 1987). As discussed above, none of the evidence presented by Defendant is substantially different.

4

briefs illustrate and as this Court found in its previous Order, Plaintiffs have disabilities ranging from paralysis to cardio-pulmonary disease. Plaintiffs depend on the Missouri Medicaid program for their prescribed DME. Plaintiffs' affidavits evidence the numerous setbacks, both in medical condition and in their ability to live independently, they suffer from the denial of DME. See Kai v. Ross, 336 F.3d 650, 656 (8th Cir. 2003) ("[T]he danger to plaintiffs' health, and perhaps even their lives, gives them a strong argument of irreparable injury . . . ."); Nemnich v. Stangler, 1992 WL 178963, *2 (W.D. Mo. 1992).

Defendant argues that Plaintiffs cannot show harm since many of the Plaintiffs have not applied for an exception under the Regulation. The Eighth Circuit and this Court found the current exceptions process inadequate. Lankford, 451 F.3d at 513 ("As the regulation allows no exception for items that are restricted under state law – and the DME regulation specifically restricts all noncovered DME items – the exceptions process does not appear to provide a reasonable opportunity to obtain non-covered items."). Plaintiffs' harm results from the enactment of an impermissible system that denies them a valid means for requesting those benefits.

Defendant also argues that Plaintiffs cannot show harm since Missouri may elect to deny DME. Lankford, 451 F.3d at 504 ("DME is an optional service under the Medicaid Act, unless the recipient qualifies for home health care."). According to Defendant, Plaintiffs would suffer greater harm from the loss of any possibility of DME benefits. This argument, as with the one discussed above, ignores that Plaintiffs suffer harm from being denied under a system that fails to satisfy Medicaid's reasonable-standards requirement. Missouri must abide by, and Plaintiffs have a right to have a system that abides by, Medicaid's requirements.

5

**Balance of the Harms**[3]

Under the third Dataphase factor, the Court must "balance between the harm and the injury that granting the injunction will inflict on other interested parties." Dataphase, 640 F. 2d at 114. Plaintiffs have incurred serious harm, both mental and emotional, resulting from the denial of DME. Kai, 336 F.3d at 656. The comparative harm to the Defendant, however, is small. Plaintiffs' injunction seeks only that Defendant comply with federal law. "Compliance with the law does not pose a burden on a defendant." White v. Martin, 2002 U.S. Dist. LEXIS 27281 (W.D. Mo. 2002). Any potential economic impact Defendant may incur from the injunction also does not outweigh the harm Plaintiffs currently suffer. Id., *citing* Kansas Hosp. Ass'n v. Whiteman, 835 F. Supp. 1548, 1553 (D. Kan. 1993) ("Changing Medicaid coverage 'significantly alters the status quo to the detriment of the individual plaintiffs, while its positive budgetary impact on state coffers is negligible in a relative sense.'"); Nemnich v. Stangler, 1992 WL 178963, *3 (W.D.Mo. 1992) ("The Court realizes that Missouri will suffer fiscal problems if enforcement of the amended regulation is enjoined. However, the harm to the plaintiffs' life and health clearly outweighs any fiscal harm the state may suffer.").

**Public Interest**

The public interest is best served by enjoining Missouri from enforcing a preempted statute. "Enforcement of laws passed by Congress is in the public interest, even when that means

---

[3] The Eighth Circuit has stated that where a plaintiff proves preemption and irreparable harm, "the question of harm to the state and the matter of public interest drop from the case." Bank One, N.A. v. Guttau, 190 F.3d 844, 847-848 (8th Cir. 1999); Forest Park II v. Hadley, 336 F.3d 724, 731 (8th Cir. 2003). Plaintiffs in those cases had a right "to injunctive relief no matter what the harm to the State, and the public interest will perforce be served by enjoining the enforcement of the invalid provisions of state law." Bank One, N.A., 190 F.3d at 847-848. Accordingly, the Court arguably need not address the remaining two factors. Nonetheless, this Court discusses the two remaining factors for the sake of clarity and to fully address the dictates of the Eighth Circuit's Opinion.

enjoining allegedly illegal actions by another government body." White, 2002 U.S. Dist. LEXIS 27281 at *24, *citing* Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991). This Court, and the public generally, cannot allow state action which conflicts with Congressional law**.** To hold otherwise would insulate states from injunctions seeking the stay of an improper enactment of Medicaid's requirements.

As stated above, Plaintiffs have no absolute right to DME under Medicaid and Missouri may choose to withhold DME benefits from all Medicaid recipients, except those that qualify for home health care. Lankford, 451 F.3d at 504 ("DME is an optional service under the Medicaid Act, unless the recipient qualifies for home health care."). In addition to arguing that the loss of all DME benefits undermines Plaintiffs' irreparable harm, Defendant argues that the loss of all DME benefits would be a far greater harm to the public interest. This Court need not choose, however, between the impermissible denial of benefits to some and the potential denial of benefits to all. Whether Missouri will provide DME benefits is a matter for the State, and not this Court, to decide. This Court's role is limited to enjoining a state regulation that is preempted by federal law.

Medicaid grants states considerable discretion in fashioning their Medicaid program. Rather than dictating to Defendant the appropriate route for remedying the current DME program, the Court GRANTS Plaintiffs' Motions for Preliminary Injunction and Motion for Summary Judgment and ENJOINS Defendant from implementing and enforcing from implementing the amendment of Mo. Code Regs. Ann. tit. 13, § 70-60.010 (2005) that became effective September 1, 2005. Defendant must amend its current DME program to comply with Medicaid's reasonable-standards requirement. Defendant shall notify the Court within thirty (30) days of the actions it is taking to comply with this Order, including if Defendant exercises its right to deny DME benefits to all Medicaid recipients, except those that qualify for home health

7

care.[4] In the intervening thirty (30) days, the version of 13 C.S.R. § 70-60.010, in effect on the date the Complaint was filed (August 29, 2005), will become effective.

Federal Rule of Civil Procedure 65(c) requires "the giving of a security by the applicant . . . . for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Defendants have not requested a bond. Plaintiffs are indigent citizens. This Court hereby ORDERS that Plaintiffs post a bond of one dollar. See Fed. R. Civ. P. 65 (c) (court may determine the amount it "deems proper.")

IT IS SO ORDERED.

Date:  March 2, 2007                                             /s/ DEAN WHIPPLE
                                                                 Dean Whipple
                                                                 United States District Court

---

[4] In their oral argument, Parties raised potential future lawsuits and amendments to the statute. The Court will not issue anticipatory rulings. Accordingly, the Court will not comment as to these issues. The Court encourages the parties to amicably confer and discuss possible solutions and approaches rather than argue potential future litigation.